Nash, C. J.
 

 In the case of
 
 Pillipse and others
 
 v. Higdon, Busb. 380, the doctrine of amendment of records, wras fully examined by this Court. It is an important subject of practice ; questions of the kind occurring upon almost every circuit of the superior courts. With a view to settle, as well as they can be, the questions arising in practice upon the subject, and to furnish the profession, with what was considered by this Court, the true principles upon which amendments of records are to be regulated, the doctrine was carefully considered. The opinion filed, divided the subject into three classes. ■’The second announces the power of a court to amend its records after a suit determined, and is in the following words: “ Every court of record has ample power, after a suit is determined, to amend its own records, that is, the journal or memorial of its own proceedings, kept by the court or its clerk, by inserting what is omitted, or striking out what may have been erroneously inserted; for every court of record is entrusted with the very responsible duty of keeping it faithfully and making it speak the truth, as it imports absolute verity, and cannot be collaterally called in question ; and the record, so amended, stands as if it never had been defective.” Under this class, the present application ranges itself.
 

 The petition alleges, that the late Major Tatom, of Orange county, by his last will, directed his slaves to be emancipated by his executors, of whom the late
 
 Duncan Oameron
 
 was one: That at the May term, 1803, of Orange county court, the executors brought into court the will of the testator, which was then duly admitted to probate, and made application to the court to liberate said slaves, which was granted, and the ex
 
 *236
 
 ecutor, Mr. Cameron, then drew up the decree of emancipation and handed it to the then clerk, John Taylor, and directed it to be entered on the minutes of said court, as a record thereof. It then states that upon an examination of the records of that term, it is discovered that the clerk neglected, or omitted to make any entry upon his minutes, of the proceedings; and the object of his petition is to have the records of the Febru-ruary term, 1803, of Orange county court, amended, so that the proceeding of that court, on the application for the emancipation, may be entered on it,
 
 nunc pro 'kmc.
 

 To show the fact of the order or decree for emancipation, the examination or affidavit of the late Duncan Cameron, taken before a justice of the peace, was offered in evidence on the part of the plaintiff. Its reception was objected to. The objection was overruled, and the affidavit was heard.
 

 When the object of the petition is considered, it will at once be seen, that the testimony was competent. It is the duty of the-court to see that their records speak the truth, and their general power to do so is not questioned. The court, in dis-» charging its duty in this particular, may hear any testimony which is calculated to satisfy its judgment. It is not deciding a question of property between litigating parties, but one touching the correctness of its officer, in the performance of his clerical duties. It was inquiring whether its records speak the truth ? "Whether its order has been obeyed ? It is entitled to draw evidence from any pure source. Mr. Cameron was dead, and of all men, living or dead, he was the most likely to know the truth. He was one of the executors of Major Tatom, and the counsel who conducted the business in court, and if the facts had been engraved in adamant, they would not have been in a firmer grasp than in his memory. "Where could the court have looked to find testimony more satisfactory? It would have been at liberty to receive his declaration or statement of what had been done. Most fortunate for the ends of justice was it, that his valuable life was spared until this controversy arose. Ilis affidavit was properly received.
 

 
 *237
 
 But it is further objected, that at the time it is alleged that tbis order of the county court of Orange was made, slaves could be emancipated only for meritorious services, rendered to the owner, and there is nothing to show the county court that such services had been rendered.
 

 The.first answer to this suggestion is, that we are not now sitting in judgment upon the action of that court in making the order of emancipation, but whether they did make it ? If they did, the parties interested have a right to have the order spread upon the records of the term when it was made. If we are to look, however, behind the order itself, we think there was testimony, in the will of Major Tatom, to authorize the declaration that the slaves had performed meritorious services to him. Of this fact, cases might occur, in which the master alone
 
 could
 
 testify ; as in passing a solitary wood, the servant may have saved his master’s life, either from an assassin, or from drowning, and no one else present. Many such instances might be supposed. But I see no reason, in law, why the court should not hear the master, when asking to confer a favor upon a favorite slave, when he was thereby stripping himself of valuable interests.
 

 It has been further argued, that every amendment supposes something to be amended, and something to amend by ; that the petition is, in substance, not to amend, but to
 
 mcü¿e
 
 a record. This idea is founded in mistake. The petition is not to amend the record of the order to emancipate, but to amend the
 
 records of the Feb.
 
 term, 1803, of Orange county court, by now causing to be put upon it, iAaAvbich was, at that time, ordered by the court, but omitted by the clerk. It is true, the court must now have something to amend by, and they have it in the statement of Mr. Cameron, and the length of time, during which, the community, in -whose midst the slaves of Major Tatom have lived, has received and counted them as free. The court has it in the additional fact, that fourteen years after the death of Majof Tatom, a bill was filed by his next of kin, against the executors, for a settlement of the estate, and in no part of the proceedings were the negroes claimed as a part of
 
 *238
 
 the estate, nor was any account asked for as to them or their hires. All this is strong evidence that the order of emancipation was made at the time alleged.
 

 It is further urged that the court will not allow an amendment of a record to the injury of third persons, who have acquired an interest under it. The principle is misapplied here. The court is not called on-to amend any process whatever, but to amend its own records, so as to make them show the truth. The record so amended can work no greater injury to any one than would arise if the order had bedn committed to the records at the time it was made, for it must speak as of that time.
 

 The question we are now considering is one of great importance to every man. Every citizen is interested in the principle, that the records of these courts of justice should import absolute verity. The security of property, and much of the peace of society depend upon it. As it is but the evidence of what has been transacted by the court, it should show the truth upon its face. To do this, the court must see that nothing ‘is put upon it not ordered by it, and nothing omitted, which they.have ordered.
 

 An old act of the General Assembly directed that upon the opening of court each morning, the record or minutes of the proceeding day’s transactions, should be read by the clerk in open court. If this practice had been observed on this occasion, much trouble and expense would have been spared.
 

 Finally, it is said that too long a time has elapsed, since the neglect occurred, to remedy it now ; the petitioner ought to have applied sooner. I know of no rule which the court lays down in such a case as this, as to any lapse of time. It is to be recollected, that to have the records amended, so as to set forth the truth, is a matter of right in him who is interested in having it done, and a matter of duty in the court, when sufficient evidence is laid before it; and the lapse of time is in no way important, further than it increases the difficulty of procuring adequate testimony.
 

 Neither can any laches attach to the delay in the filing of this petition. Mr. Cameron states that he was not apprised of.
 
 *239
 
 the oniission of the clerk to make the necessary entries, until the setting up of the claim by these defendants.
 

 No case.can be presented, more emphatically exhibiting the necessity of the role of law we are examining, than the one now before us. An aged man without children, or any descendants of such, is about to descend- to the grave. Between him and his slaves exists a tie which is unknown to the master and the hireling: on the one hand, the proud consciousness of power and protection, and on the other, the consciousness of humble submission and gratitude for kindness, which, in sicknesss and in health, has known no waveringl This tie is about to be sundered; no creditor claims them; the aged man looking-around him, asks himself, “ then, whose shall these be ?” He does what he can to confer upon them the boon they hold most dear ! Half a century passes away; for that time, the slaves and their descendants have enjoyed their freedom; at length it is discovered -that the records are silent on the subject; immediately, the birds of prey are upon the wing, and they ara seized as slaves, and the demand is made upon them to
 
 prove
 
 their freedom. It would indeed be a reproach to the law, if there was no way in which it could correct the evil, growing, in a measure, out of its negligence.
 

 Pee CueiaM. The judgment of the Superior Court is affirmed.